HOLNAGLE *v.* LANSING FUEL & GAS CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—APPEAL
AND ERROR—EVIDENCE.

On certiorari to review an award of compensation by the
industrial accident board, under the workmen's compen-
sation act, where there is competent testimony upon which
to base its conclusion, the award of the board will not
be disturbed.

Certiorari to Industrial Accident Board. Submitted
October 23, 1917. (Docket No. 46.) Decided March
27, 1918.

Nellie Holnagle presented her claim for compensa-
tion against the Lansing Fuel & Gas Company for
the accidental death of her husband in defendant's
employ. From an order awarding compensation, de-
fendant and the Fidelity & Casualty Company, in-
surer, bring certiorari. Affirmed.

*Guy W. Moore* and *Hal P. Wilson,* for appellants.

*Rhoads & Reynolds,* for appellee.

MOORE, J. Claimant's decedent, on January 16,
1917, was discovered unconscious, if not dead, lying
on the ground near and partly upon a small box in
which was a stopcock from which illuminating gas
was escaping. He did not regain consciousness and
was pronounced dead. The premises belonged to the
Lansing Fuel & Gas Company, whose employee claim-
ant's decedent was. A process in the manufacture of
illuminating gas is washing it with water, and when
delivered into the purifying tank the water which
collects at the bottom of the tank is drained through
a pipe leading to the outside, having its opening con-

trolled by the stopcock referred to, in the little wooden box.  The stopcock was manipulated with a monkey wrench or Stillson wrench, and it was the daily duty of claimant's decedent to open it and drain the tank of water.  The quantity of water varied from day to day, and so the time required to drain the tank varied. On the particular occasion, a fellow employee had, at the request of claimant's decedent, opened the stopcock at about 9 o'clock in the forenoon.  The same man had also, a few moments later and a few moments before the body was found, given the deceased man the wrench, upon his request therefor.  When the body was found the water had been drained away and the force of escaping gas was blowing the water in the form of vapor several feet into the air.

Illuminating gas contains carbon monoxide and marsh gas (methane), in considerable quantities—of carbon monoxide 30 per cent. and more.  These are poisonous gases, and, inhaled, may cause sudden death.

Claimant contends a committee of arbitration and the industrial accident board found that her husband, the deceased, accidentally inhaled enough gas to kill him.  Defendants contend there is no evidence supporting this conclusion and none from which the necessary inference may reasonably be drawn.  They contend, further, that the evidence quite as well, and better, sustains the conclusion that deceased died from chronic gas poisoning, an occupational disease, or from other disease.

After the body of deceased had been embalmed, in the evening of the day of his death, an autopsy was held, at which six physicians, all of whom gave testimony, attended.  The most of a very large record consists of the testimony of these physicians.  At the autopsy an examination was made of the organs of the chest and abdomen and of the brain.  It was a gross examination — examination by inspection — as

distinguished from a microscopic examination. The valves of the heart were somewhat hardened.

We will not attempt to recite the evidence in detail.

Dr. Crissey's testimony is very long. In it appears the following:

"*A*. Illuminating gas contains carbon monoxide.

"*Q*. That is true; we are working upon the theory from your statements, that there is carbon monoxide and marsh gas in illuminating gas?

"*A*. Yes, sir.

"*Q*. And that illuminating gas does not break up of its own accord into its several parts?

"*A*. Yes, sir.

"*Q*. Now is it your opinion that one breath of illuminating gas—

"*A*. Yes, sir.

"*Q*. —will cause instant death such as occurred in the case of Mr. Holnagle?

"*A*. Why, certainly.

"*Q*. Will you explain your reason for that?

"*A*. You take a certain volume of carbon monoxide gas and a certain volume of marsh gas, or methane, and mix them and put them in a box or put them in a condenser and let a man breathe that in a certain concentration, it will kill him immediately, just the same as a man going down a well; a man goes down a well and he is found dead clinched to the ladder. What killed him? It is the marsh gas, methane, of which we find something like thirty per cent. in ordinary illuminating gas, from 20 to 30 per cent."

Dr. Davey took part in the autopsy. In his testimony appears the following:

"*Q*. From your examination, doctor, state whether or not there was any indication of anything being abnormal about any of the organs that you examined?

"*A*. There was not.

"*Q*. Did you examine the heart?

"*A*. Yes, sir.

"*Q*. Was there any indication of anything abnormal about the heart?

"*A*. Not that I could find or see.

"*Q.* From your examination of the organs, are you able to say whether there was any indication of anything that would cause death, anything being wrong with them?

"*A.* No.

"*Q.* What conclusions did you come to as to the cause of death, from your examination?

"*A.* The only conclusions were those of the history of the case.    *    *    *

"*Q.* What were your conclusions?

"*A.* Conclusions were that the man had inhaled a sufficient amount of gas that could be the cause of his death.

"*Q.* There was no indication, from your examination, of any other cause of death?

"*A.* No, sir."

If the owner of an automobile was found unconscious in his closed garage with the engine to his car running, would not one familiar with like situations at once say he had been overcome by inhaling the exhaust from the engine. The inferences to be drawn from the circumstances in the instant case are of like kind to that drawn in the suppositious case, though perhaps differing in degree.

We have so often held, as to not require the citation of authorities, that, if there is competent testimony upon which to base the conclusion of the industrial accident board, we will not disturb it. In the instant case there was such testimony.

The award is affirmed, with costs.

OSTRANDER, C. J., and BIRD, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.