Before STATE INDUSTRIAL BOARD, Respondent.
MOLLIE CANTOR and Others, Respondents, *v.* ELSMERE GARAGE and Another, Appellants.

Third Department, November 12, 1925.

**Workmen's compensation — claimant's intestate was employed in garage — evidence shows death by carbon monoxide gas — death was caused by accidental injury arising out of and in course of employment.**

The claimant's intestate, who at the time of his death was an employee of a garage, suffered an accidental injury arising out of and in the course of his employment, since it appears that a short time before his death he was apparently in good

health, and that within a few moments he fell, and upon examination by doctors, the symptoms shown were those present in a case of carbon monoxide poisoning.

The presence of the gas in the garage, which cannot be detected, since carbon monoxide is odorless, was unexpected, and while the breathing was voluntary on the part of the employee, the breathing of the poison gas was not voluntary.

APPEAL by Elsmere Garage and another from an award of the State Industrial Board, made on the 30th day of April, 1925.

*Robert M. McCormick* [*William S. Pendleton* of counsel], for the appellants.

*Albert Ottinger,* Attorney-General [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

VAN KIRK, J.:

The Industrial Board has found: " On December 21, 1924, while the said Herman Cantor was engaged in the regular course of his employment, and while working for his employer at his employer's plant, he inhaled thereat carbon monoxide gas, and because of the inhalation of the same, * * * which was generated by the running motors in the automobiles in said garage, the deceased suffered from carbon monoxide poisoning from which he died on December 21, 1924, his death being naturally and unavoidably the result of the injuries which deceased sustained. * * *." There is evidence to sustain these findings. At the first hearing the attorney for the carrier stated: " There is no question but that, at the time, he was working in the garage. The question is as to the cause of death solely in the case." That is the one question raised upon this appeal. The deceased was working with one man, John Hary. At this time there were stored in the garage sixty-eight automobiles. At eight o'clock in the evening Dr. Marlowe came to the garage to get his car. He saw and talked with the deceased, who appeared perfectly well. Deceased had been well during the day. He made no complaint of sickness; was never known to have any heart trouble. About seven months before he had been examined for life insurance. After the examination a policy was tendered to him at his home, but his wife induced him not to take the policy because of the cost. Dr. Marlowe at eight o'clock noticed no smell of gas in the garage. About eight o'clock also the man Hary came on for work. He changed his clothes; a car came in and he and Cantor moved it into position while its engine was running. Mr. Cantor then went to the door to admit another car; soon after he returned and Hary says Cantor " looked funny." Deceased fell down, made a noise two or three times when breathing; he was carried into the office.

Dr. Marlowe returned to the garage about nine o'clock. They were about to send for a doctor, but, Marlowe coming in, looked after Cantor. He says Cantor at that time was dying and in his opinion the cause of death was carbon monoxide gas. There was a strong smell of gas in the garage; the doors were closed. He says he found a marked blueness of the lips. Asked: "Does that come immediately from carbon monoxide poisoning?" he answered: "Carbon monoxide has that effect." The ambulance doctor says that, when he arrived, Cantor's face and lips were blue.

It thus appears that, but a short time elapsed between the time when Dr. Marlowe says there was no smell of gas in the garage and the time when Cantor fell to the floor. He did not suffer from a gradual and continuous inhalation, but the infliction was quick and of short duration.

The deceased suffered an accidental injury, which arose out of the employment. The accident was the inhaling of the carbon monoxide gas. · This gas in itself is odorless; it is present in the gas from burning gasoline; but generally not in harmful quantities. This gas had been quickly disseminated in the garage shortly before Cantor fell to the floor, perhaps while he was aiding Hary to push into place the car the engine of which was running. The presence of the gas was unexpected and, while the breathing was voluntary, the breathing of a poison gas was not voluntary. If one drinks a glass of water, apparently clear and pure, it is a voluntary act; if, however, unknown to him, this water contains a not distinguishable poison, drinking the poison is not to him voluntary, but an accident. The time when the accident occurred is fixed. It seems there is present here every element of accident, no niches vacant, and the direct resultant injury was poison and death. We have affirmed without opinion awards for poisoning by gas (*Duchenes* v. *Plattsburgh G. & E. Co.*, 207 App. Div. 876; *Silny* v. *Margulies*, Id. 880; *Gray* v. *Semet-Solvay Co.*, 194 id. 946; affd., 231 N. Y. 518), which I do not think in principle can be distinguished from this case.

The award should be affirmed, with costs to the State Industrial Board.

Award unanimously affirmed, with costs to the State Industrial Board.