In the Matter of the Claim of JOSEPHINE REICHARD, Respondent, against H. H. FRANKLIN MANUFACTURING COMPANY and Another, Appellants.

STATE INDUSTRIAL BOARD, Respondent.

*Workmen's compensation — causal relation — decedent had heart disease — decedent inhaled carbon monoxide gas in automobile test shed — decedent died sometime thereafter — decedent suffered accidental injury.*

Appeal from an award of the State Industrial Board, dated March 30, 1927.

Award affirmed, with costs to the State Industrial Board. Hinman, Davis and Hill, JJ., concur; Van Kirk, P. J., dissents, with an opinion, in which Whitmyer, J., concurs.

VAN KIRK, P. J. (dissenting). The question in this case is whether or not the deceased suffered an accidental injury. Deceased was a repairman in an automobile shop. The accidental injury is claimed to have been sustained on June 14, 1922, when he was, and for about two years prior thereto had been, working in the test shed of his employer. In this shed there were a number of automobiles being tested constantly. In the work it was necessary that the engines be kept running and from time to time more or less gas was discharging. The injured employee, now deceased, filed a claim for compensation. Proof was taken and an award made. The deceased had testified that, on June fourteenth, he was

not working around gas, but had a fainting spell, that he had had a valvular disease of the heart for some eight or ten years before the alleged accident. He had worked for the Franklin Manufacturing Company, the employer here, a considerable part of the time since 1911, though not constantly. Early in 1920 he went to the test shed to work and remained at work there, with the exception of about one month, until June 22, 1922. There was considerable conflict in fixing the time when the accident was claimed to have occurred. June fourth was first mentioned as the day, but finally June fourteenth was fixed. During his work in this test shed he was from time to time affected by the gas and went outside to get relief. On three or four specific occasions the deceased had to go out for relief. In particular upon June fourth, June fourteenth and June twenty-second he had experienced this trouble. On the fourteenth he left his place of work, went outside and was dizzy and faint. He was taken home, returned to work upon the nineteenth, worked about two days and on the twenty-second again suffered from the effects of the gas or his heart trouble and thereafter did not return to work. Under date of March 27, 1924, Mr. Curran, a member of the Industrial Board, rendered an opinion stating that the dose of carbon monoxide gas received on June 14, 1922, was not sufficient to cause a permanent defect, although it might excite his heart condition. " Further, since the real attack which incapacitated him came later when he was not working near gas, I am of the opinion that the gas has nothing to do with the heart condition. If it had any effect, it was merely passing. In view of all these facts, I find that claimant's condition is not the result of an accident occurring within the course of his employment. Previous award is hereby rescinded, and case closed." On October 4, 1924, he died of endocarditis, but it is plain that carbon monoxide gas did not cause the disease. Thereafter this claimant filed her claim. The proof in the case was not materially changed, but an award was made to the widow and children. That award was reversed on the ground that the evidence submitted did not sustain the finding of an accident. The court had found that, on June 14, 1922, the deceased " inhaled a sufficient amount of carbon monoxide gas, which was being discharged from an automobile on the other side of the said test shed, as to cause him to become dizzy and faint. The deceased performed but little work thereafterwards, as he suffered from a condition of the heart known as endocarditis, from which he died, on the 4th day of October, 1924. The progressive and active condition of endocarditis, from which the deceased died on the 4th day of October, 1924, was naturally and unavoidably the result of the inhalation of carbon monoxide gas at his employer's test shed on June 14, 1922. He had a pre-existing condition of the heart and the disturbance caused by the toxemia, or poisoning, which in this case was produced by the inhalation of the said carbon monoxide gas, super-imposed upon the deceased's pre-existing heart condition, caused degeneration of the deceased's heart muscles and in turn deceased's death, from endocarditis; * * *." The testimony taken after the reversal begins at page 233. It will be noticed that no testimony had been taken for more than two years after the alleged accident and the testimony taken after the reversal in this court was nearly four years after the alleged accident. Five lay witnesses testified, but no one added anything material to the facts of the case. The additional medical testimony was in answer to hypothetical questions and directed largely to the cause of death. I can find nothing which bears upon the question of an accidental injury. I think that the

award must be reversed. It appears that no appeal was taken from the decision made upon the memorandum of Mr. Curran and there is no variation in the evidence as to the accidental injury since our former decision. The undisputed fact seems to be that for years the deceased was working in this garage or shed; that, during these years, he was suffering from a heart disease and frequently felt the dizziness and faintness which he felt on June 14, 1922. He did not die of poison from carbon monoxide gas. Whatever effect this gas had in producing his death came from frequently repeated exposures to the gas. There was no time fixed when he had an accidental injury. (*Rosenthal* v. *National Aniline & Chemical Co.*, 216 App. Div. 588.) I think the case is entirely different from that of *Cantor* v. *Elsmere Garage* (214 App. Div. 351), where the deceased was subjected to a quick discharge of carbon monoxide gas unusual in quantity and died immediately therefrom. Nearly six years have now passed since the alleged accidental injury. All the witnesses who could have any recollection of the occurrences on June 14, 1922, have been examined thoroughly and it seems to me there is no possibility that additional evidence can be procured. Unless there was an accidental injury, medical or expert testimony cannot aid. I, therefore, recommend that the award be reversed and the claim dismissed on the ground that there is no evidence to uphold a finding that the deceased sustained an accidental injury in the course of his employment on June 14, 1922. Whitmyer, J., concurs.