TOMLANOVICH *v.* AMERICAN BOSTON MINING CO.

1. WORKMEN'S COMPENSATION—CARBON MONOXIDE GAS—MINERS—TUBERCULOSIS—ACCIDENT.

In proceeding by miner to recover compensation from employers for total disability, finding of department of labor and industry that employee's condition was result of having been overcome by carbon monoxide gas, smoke and silica dust when air line failed to work following a blast and which re-activated tuberculosis *held*, supported by evidence and to justify award of compensation as for accidental injury.

2. SAME—NOTICE TO FOREMAN SUFFICIENT.

Notice to foreman of injury to employee is notice to employer (2 Comp. Laws 1929, § 8431).

3. SAME—SUFFICIENCY OF NOTICE.

Notice to mine foreman that miner had been gased without stating air line had been stopped *held*, sufficient notice of accident to put employer upon inquiry where being overcome by gas occurs under such circumstances as to be an accident arising out of and in the course of the employment (2 Comp. Laws 1929, § 8431).

4. SAME—CERTIORARI—FINDING OF DEPARTMENT—AMOUNT OF COMPENSATION.

Finding of department of labor and industry as to amount of compensation payable, based on conflicting testimony, may not be disturbed by Supreme Court in its review of the case by appeal in the nature of certiorari (2 Comp. Laws 1929, §§ 8425, 8427).

Appeal from Department of Labor and Industry. Submitted June 7, 1935. (Docket No. 59, Calendar No. 38,423.) Decided September 9, 1935. Rehearing denied October 30, 1935.

Mike Tomlanovich presented his claim for compensation against the American Boston Mining Company and M. A. Hanna Company, for accidental injuries sustained while in defendants' employ. Award to plaintiff. Defendants appeal. Affirmed.

*Derham & Derham,* for plaintiff.

*Charles M. Humphrey* and *Charles M. Humphrey, Jr.* (*M. S. McDonough,* of counsel), for defendants.

NORTH, J. Plaintiff was in defendants' employ as a miner. Both were under the workmen's compensation act. Plaintiff, claiming he sustained an accidental injury arising out of and in the course of his employment, was awarded compensation. Defendants have appealed.

Plaintiff and Joe Chartier worked together and were engaged in drilling incident to blasting the mine ore with dynamite. They were working in a

small chamber about 8 by 10 feet, access to which was up through a 77-foot vertical shaft in which there was a ladder. Between 11 and 12 o'clock on May 15, 1931, the day of the alleged accident, these men completed two blasting operations. Their working place was equipped with an air hose having about 70 pounds pressure. This was used both in drilling and to blow out of the working chamber the gas and smoke after blasting. This air hose was turned on by these men after they lighted the fuse for blasting. About an hour after the second blasting plaintiff and Chartier returned to their working place. They found the air hose was covered with dirt and iron ore and was not "running." The two men proceeded with picks and shovels to remove the dirt and iron ore and to partially uncover the air hose. In about 15 minutes plaintiff became weak and sick, and shortly dropped down unconscious. His fellow workman applied damp earth or mud to plaintiff's face and to the back of his neck. Plaintiff revived sufficiently to go down the ladder with Chartier's assistance and out of the mine. On the way out the "shift boss" was told by plaintiff, according to his testimony, that he "was sick and weak from the gas" and was going home. Plaintiff claims that as he was walking home from the mine he fell down two or three times, and upon reaching his home he immediately went to bed. He returned to the mine the next day, and was placed at work cleaning the tracks. He continued in defendants' employ until July 21, 1931. He then laid off, apparently being in ill health. Dr. Felding at that time made a diagnosis of chronic fibroid tuberculosis. Plaintiff thereupon went to a tuberculosis sanitarium. He returned to defendants' employ in February, 1932, but was given work on the surface and worked only 24 days. He claims that he has not been able to work since. April 2, 1934, plaintiff

applied for adjustment of compensation, claiming he had been "overcome by gas; lungs affected; contracted tuberculosis, and injury to body and internal organs."

Appellants seek to have the award for compensation set aside on the ground that plaintiff did not sustain an accidental injury and urge that plaintiff's disability, if any, is due to an occupational disease —*i. e.,* so-called miner's consumption. There is testimony to sustain the finding of the department both as to plaintiff's disability and as to its cause. In part its opinion reads:

"As stated, we think the plaintiff was definitely affected by carbon monoxide gas and that is what did cause his unconsciousness. * * *

"We note that Dr. L. U. Gardner, on behalf of the defendants testified in part as follows:

"'*Q.* Will you tell us what you know about the re-activation of a latent tuberculosis?

"'*A.* We have been engaged in the pathological and experimental study of this condition over a long period of time. We have searched for the various factors which might re-activate a pre-existing condition and cause it to become progressive. We have also experimented with chlorine gas. That gas is a corrosive gas but it does not re-activate such infection. The only substance we have thus far found which does re-activate such infection is the inhalation of silica dust of the same composition as that encountered by men working after blasts in mines.' * * *

"One of the defendants' own doctors, as we have just shown, brought the matter of inhalation of silica dust into the case. Professors Brines and DeWitt attach importance to the inhalation of silica dust and smoke combined with the monoxide poisoning in producing the condition they found plaintiff in, which they attribute to the accident, and, by the way, it certainly must be construed to be an accident when the air line going into the place where these men worked was plugged up by dirt and ore so that the poisonous gases and dust could not properly be driven out of the scene of their employment before they entered. * * *

"Dr. Brines testified briefly that the irritants which activated the tuberculosis were the severe gases, including the carbon monoxide and also dust which would also 'naturally be in the air;' that the smoke, dust and gases were the elements for reactivating the tuberculosis. Professor DeWitt testified that plaintiff's exposure to dust, gas and smoke was directly responsible for plaintiff's present condition."

The testimony in this record is sufficient to sustain the finding of an accidental injury which caused plaintiff's disability.

The employer made no report of the accident, but appellants claim lack of notice or knowledge of the accident within three months (2 Comp. Laws 1929, § 8431).

This claim cannot be sustained. Notice to plaintiff's superior was notice to the employer. *Hajduk v. Revere Copper & Brass, Inc.*, 268 Mich. 220. We have noted above that as plaintiff was leaving the mine immediately after the accident he told his foreman that he (plaintiff) was sick and weak from gas. The foreman told plaintiff to go home and another man was put in plaintiff's place by the foreman to work with Chartier. Plaintiff's testimony that he reported having been gassed to his foreman is corroborated by that of Chartier. The opinion of the department contains the following:

"As to the claim of the defendants that they had no notice or knowledge of plaintiff's accident, we find upon examination of the testimony of the plaintiff and his fellow workman, Chartier, that they both testified positively that they told the foreman that the plaintiff had been gassed and he could no longer work. It is not denied that plaintiff was forced to quit work and that the foreman sent a new partner to work with Chartier."

Notwithstanding the testimony above noted and the finding of the department, appellants strenuously urge that the notice of the accident within three months as required by statute (2 Comp. Laws 1929, § 8431) was not given, and therefore plaintiff is not entitled to an award of compensation. Appellants state in their brief:

"There is not one word of testimony in this case showing that defendants had any notice or knowledge of plaintiff's claimed accident. Since it is plaintiff's claim and since the commission found as a matter of fact that the accident in this case was the *covering up of the air line,* and since at all times defendants have insisted upon their defense of no notice or knowledge (15, 226, 6, 8, 9), this court must find some evidence in the record upon which this claim and the commission's finding is based. There is not one word of testimony in the whole record showing that defendants had any notice or knowledge within the statutory period *of the failure of the air line to work.*"

Confessedly there is testimony to sustain the finding of the department that the employer had notice that plaintiff was gassed; but it is equally clear that there is no testimony that the employer had notice or knowledge of the stoppage of the air line. However, the injury in consequence of which plaintiff seeks compensation was being "overcome by gas," etc. Being overcome by gas under the circumstances herein disclosed is an accident. *Holnagle* v. *Lansing Fuel & Gas Co.,* 200 Mich. 132; *Derleth* v. *Roach & Seeber Co.,* 227 Mich. 258 (36 A. L. R. 472); *Beck* v. *Commercial Driveaway, Inc.,* 260 Mich. 550; *Dailey* v. *River Raisin Paper Co.,* 269 Mich. 443.

Appellants cite and rely upon: *Herbert* v. *Railway Co.,* 200 Mich. 566; *Ames* v. *Lake Independence*

*Lumber Co.,* 226 Mich. 83 (23 N. C. C. A. 778); *Johnson* v. *Bergland Lumber Co.,* 231 Mich. 34; *Gumtow* v. *Kalamazoo Motor Express,* 266 Mich. 16; *Starkweather* v. *Weidman Lumber Co.,* 270 Mich. 355. We think the cited decisions are not controlling of the instant case. In each of them the total lack of notice or knowledge of the accident was established. As noted above, such was not the fact in the case at bar. This record does not sustain appellants' contention that the accident, if any, was the stoppage of the air line, not plaintiff's being gassed.

"In such notice as plaintiff gave to his employer during the period of three months he spoke of the result rather than the cause of his injury—of the consequence of the accident rather than of the accident itself. Such notice was inaccurate. But accuracy and nicety of statement are not required imperatively. The importance of the notice of injury is that the employer may have opportunity for investigation while the facts are accessible. * * * It was at least sufficient to put the employer on inquiry." *Mauch* v. *Bennett & Brown Lumber Co.,* 235 Mich. 496.

Plaintiff herein began working for the defendant mining company in 1927. His alleged injury occured in May, 1931. He testified:

"*Q.* Did you ever get any gas in the mine before this one time?
"*A.* No."

The foreman under whom plaintiff worked testified:

"*Q.* ` And didn't you also tell us that you didn't report anything like that; all you reported was cuts and things like that?
"*A.* I said if he had got hurt in the mine or gassed—*that is getting hurt too*—I always made a report."

Testimony of the character above quoted was sufficient to justify the finding by the department that being gassed in defendant's mine under the circumstances disclosed was in and of itself an accident which arose out of and in the course of plaintiff's employment, and of which the employer had sufficient notice.

Appellants present on this appeal the further question as to whether, in case plaintiff is entitled to compensation, the rate of $18 per week fixed by the department is correct or whether it should have been $16 per week. Plaintiff testified:

"*Q.* Were you working in the defendant's mine on or about May 15, 1931?
"*A.* Yes.
"*Q.* What kind of work were you doing at that time?
"*A.* Mining.
"*Q.* And what were your wages at that time?
"*A.* From $4.40 up; $5, $6. * * *
"*Q.* He said he made from $4.40 up, now how much did he average; did he average $5 or what did he average?
"*A.* About $5 or $6."

On the basis of this testimony plaintiff was entitled to $18 per week. 2 Comp. Laws 1929, §§ 8425, 8427. On cross-examination of plaintiff he admitted his signature to defendant's records, evidently made as a part of its payroll, which seem to show quite conclusively that throughout the month of May, 1931, the rate of pay was 50¢ per hour for 48 hours per week, totaling $24. On this basis plaintiff's compensation would be at the rate of $16 per week. Defendants' counsel did not press plaintiff for an explanation of this discrepancy nor obtain from him any admission of an inaccuracy in the testimony he had given as to his pay. Clearly the record contains

conflicting testimony. The department accepted that which was more favorable to the employee. The case being before us on certiorari we are without power to change the finding of the department.

Other questions presented by appellants have been considered, but we find nothing in the record which would justify setting aside the award of compensation made to plaintiff by the department of labor and industry. The award is affirmed, with costs to appellee.

POTTER, C. J., and NELSON SHARPE, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.