CAZAN *v.* CITY OF DETROIT.

1. WORKMEN'S COMPENSATION—ACCIDENTAL INJURY.
    The workmen's compensation act contemplates that an accidental injury may result by mere mischance, may be due to carelessness, not wilfulness, to fatigue, to miscalculation of the effects of voluntary action.

2. WORDS AND PHRASES—ACCIDENT DEFINED.
    An accident is an unforeseen event occurring without the will or design of the person whose mere act causes it; an unexpected, unusual or undesigned occurrence; the effect of an unknown cause, or, the cause being known, an unprecedented consequence of it; a casualty.

3. WORKMEN'S COMPENSATION—CARBON MONOXIDE GAS—ACCIDENT
   —TUNING UP MOTORS.

    City bus department employee, whose duties were to tune up
   motors of busses before they were taken out on the day's
   run, *held,* to have suffered an accidental injury within mean-
   ing of workmen's compensation act where condition of total
   disability resulted from being overcome by carbon monoxide
   gas while he was tuning up. a motor to which he had been
   assigned, the release of carbon monoxide gas in unusual quan-
   tities into the interior of the bus being an unexpected and
   unusual occurrence (2 Comp. Laws 1929, § 8407 *et seq.*).

4. SAME—FINDING OF DEPARTMENT—TRAUMATIC NEUROSIS—MED-
   ICAL TESTIMONY.

    Finding of department of labor and industry that plaintiff's
   condition of traumatic neurosis resulted from carbon monoxide
   gas poisoning *held,* sustained by testimony presented by plain-
   tiff's medical witness.

Appeal from Department of Labor and Industry.
Submitted January 8, 1937. (Docket No. 77, Calen-
dar No. 39,172.) Decided March 1, 1937.

John Cazan presented his claim for compensation
against City of Detroit, Department of Street Rail-
ways, for accidental injuries sustained while in its
employ. Award to plaintiff. Defendant appeals.
Affirmed.

*Lewis & Watkins* (*John R. Watkins* and *Milton F.
Mallender,* of counsel), for plaintiff.

*Rodney Baxter, James S. Shields* and *Harry F.
Pisula,* for defendant.

SHARPE, J. This is an appeal from the depart-
ment of labor and industry. Plaintiff was a motor
mechanic and had been in the employ of defendant
company since 1927 at an average weekly wage of
$32. He was employed at the Second avenue garage

in Highland Park in the capacity of "tune up" man with duties of tuning the motors and getting the busses ready for the drivers. At 5 a. m., November 2, 1934, plaintiff went to work and was assigned to start coach No. 632 which was a large passenger bus with the motor centrally located between the front and rear wheels. At first plaintiff was unable to start the motor, but after making some adjustments succeeded in getting the motor started. Plaintiff then installed two new spark plugs, again started the motor and continued to adjust it from the interior of the bus for a period of a few minutes, he then felt ill, left the coach and was later found by another workman lying on the floor of the garage. He was taken to the Highland Park General Hospital where he was found to be suffering from carbon monoxide poisoning. During the day he was revived and in the evening was discharged to go home. November 6th, plaintiff returned to work and continued to work as a motor mechanic until January 5, 1935. On the following day he called in Dr. Hillier who diagnosed his condition as an acute naso-respiratory infection and chronic nephritis. On January 21, 1935, plaintiff was removed to Harper Hospital where Dr. Sullivan examined him and found a nephritic condition. On March 13, 1935, plaintiff was admitted to the Ford Hospital where he remained until May 13, 1935, as an in-patient and thereafter has been treated at the hospital as an out-patient.

Plaintiff filed a notice and application for adjustment of claim against defendant and on July 17, 1936, the department of labor and industry awarded plaintiff compensation at the rate of $18 per week for total disability from January 6, 1935, until the further order of the department. Defendant appeals and contends that plaintiff did not suffer an accident

within the meaning of the statute on the date alleged, nor is his present disability caused from the inhalation of carbon monoxide gas fumes.

In *Robbins* v. *Original Gas Engine Co.*, 191 Mich. 122, 129, we said:

"The statute seems to contemplate that an accidental injury may result by mere mischance; that accidental injuries may be due to carelessness, not wilful, to fatigue, and to miscalculation of the effects of voluntary action."

And in *Frankamp* v. *Fordney Hotel*, 222 Mich. 525, we said:

"The word 'accident' is defined in Black's Law Dictionary as follows:

" 'Accident. An unforeseen event occurring without the will or design of the person whose mere act causes it; an unexpected, unusual or undesigned occurrence; the effect of an unknown cause, or, the cause being known, an unprecedented consequence of it; a casualty.' "

In *Beaty* v. *Foundation Co.*, 245 Mich. 256, the packing about a cable passing into a lock-box leaked air and accelerated decompression to the point of causing a workman to become ill, resulting in his death. Mr. Justice WIEST, speaking for the court, said, in speaking of caisson sickness:

"But when it is caused by a fixed and single fortuitous and preventable circumstance it is not an occupational disease but an accident within the meaning of the workmen's compensation law."

See, also, *Adams* v. *Acme White Lead & Color Works,* 182 Mich. 157 (L. R. A. 1916 A, 283, Ann. Cas. 1916 D, 689, 6 N. C. C. A. 482).

In *Cantor* v. *Elsmere Garage,* 214 App. Div. 351 (212 N. Y. Supp. 327), there was held to be an accidental injury where there was evidence that a work-

man in a garage in which a large number of automobiles were stored was perfectly well at 8 o'clock in the evening, and that inside of an hour, during which time the engine of a car was running in the closed garage, he fell down and shortly thereafter died. The court said:

"It thus appears that but a short time elapsed between the time when Dr. Marlowe says there was no smell of gas in the garage and the time when Cantor fell to the floor. He did not suffer from a gradual and continuous inhalation, but the infliction was quick' and of short duration.

"The deceased suffered an accidental injury which arose out of the employment. The accident was the inhaling of the carbon monoxide gas. This gas in itself is odorless; it is present in the gas from burning gasoline, but generally not in harmful quantities. This gas had been quickly disseminated in the garage shortly before Cantor fell to the floor, perhaps while he was aiding Hary to push into place the car the engine of which was running. The presence of the gas was unexpected and, while the breathing was voluntary, the breathing of poison gas was not voluntary. If one drinks a glass of water, apparently clear and pure, it is a voluntary act; if, however, unknown to him, this water contains a not distinguishable poison, drinking the poison is not to him voluntary, but an accident.

"The time when the accident occurred is fixed. It seems there is present here every element of accident, no niches vacant, and the direct resultant injury was poison and death."

See, also, *Beck* v. *Commercial Driveaway, Inc.*, 260 Mich. 550; *Tomlanovich* v. *American Boston Mining Co.*, 272 Mich. 493; *Derleth* v. *Roach & Seeber Co.*, 227 Mich. 258 (36 A. L. R. 472); *Holnagle* v. *Lansing Fuel & Gas Co.*, 200 Mich. 132; and cases cited in the annotation in 90 A. L. R. 619.

In the case at bar, plaintiff's duties were to tune up the motors so that the coaches would be ready for service. In working upon the particular coach he adjusted the timing and set the distributor and then noticed that the motor was missing on a couple of cylinders; he then obtained new spark plugs, again started the motor and while working on the adjustments of the motor he felt himself being overcome. The tuning of the motor was within the course of plaintiff's duties, but the release of carbon monoxide gas in unusual quantities into the interior of the bus was an unexpected and unusual occurrence. In our opinion it was an accident within the meaning of the compensation law. (2 Comp. Laws 1929, § 8407 *et seq.*)

The record discloses that when plaintiff was admitted to the Ford Hospital, a thorough examination was made. Plaintiff was found to undergo unexpected changes of color accompanied with perspiration and shortness of breath; he was sleepless, irritable and nervous; had thickened arteries, prostate infection; and was suffering from a general condition termed traumatic neurosis. The department of labor and industry found that plaintiff's condition was the result of the carbon monoxide gas poisoning. Upon many occasions we have said that if there is competent evidence to sustain the finding of facts of the department of labor and industry, we will not disturb such finding. In this case the following testimony of Dr. Heldt, a witness produced by the plaintiff, sustains the finding of the department:

"*Q.* So that, in your opinion, the claimant, here, Cazan, is suffering from a functional nervous disturbance, following an injury?

"*A.* Yes, sir.

"*Q.* And state whether or not, that injury in your opinion, was the carbon monoxide poisoning?

"*A.*   Yes, sir.

"*Q.*   So that, in your opinion, Cazan is in the condition he is in now, as a result of the carbon monoxide poisoning?

"*A.*   Yes, sir, and the set of circumstances that beset it at the time and since.

"*Q.*   That is, that was the starting point of it, is that correct?

"*A.*   Yes, sir.

"*Q.*   Is he suffering from an actual physical disease, is this traumatic neurosis a physical disease?

"*A.*   It has its physical components, just as surely as it has its mental.

"*Q.*   Doctor, evidence has been submitted here, showing that examinations were made of Mr. Cazan which disclosed a kidney condition, a nephritis, I think it was called, and also some other infections, a prostate infection, I think, and a gonorrheal infection.   You are familiar with those findings?

"*A.*   Yes, sir.

"*Q.*   State whether or not in your opinion, any or all of those conditions, without the carbon monoxide poisoning would have produced the traumatic neurosis?

"*A.*   They would not."

The award is affirmed, with costs to appellee.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, POTTER, and CHANDLER, JJ., concurred.